# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| OSCAR BAPTISTE, | : | |
| Plaintiff, | : | Civ. No. 18-16826 (KM) |
| v. | : | |
| ATTORNEY GENERAL OF THE UNITED STATES, | : | **OPINION & ORDER** |
| Defendant. | : | |

**KEVIN MCNULTY, U.S.D.J.**

## I. INTRODUCTION

The plaintiff, Oscar Baptiste, is an immigration detainee currently held at the Essex County Correctional Facility in Newark, New Jersey. He is subject to a final order of removal. He has recently written the court stating that he physically resisted being placed on a plane to Panama, his country of origin, because he did not know whether the removal order was final, and because he had certain applications pending. (DE 9) That is not a basis for resisting lawful removal. Here, however, I write to deal with a pending motion for a stay and to clarify Mr. Baptiste's status.

This is an action seeking a writ of mandamus compelling the United States Citizenship and Immigration Service ("USCIS") to adjudicate (*i.e.*, grant) his N-400 application for naturalization as a U.S. citizen. On February 1, 2019, Mr. Baptiste filed a motion for stay of removal pending resolution of this action. (DE 6). The United States filed a response on February 19, 2019. (DE 8) For the reasons stated herein, the application for a stay is denied.[1]

---

[1] Also pending before this Court is a petition for habeas corpus (Civ. No. 18-11524). In it, Mr. Baptiste asserts that his detention has been unduly prolonged and that he should be released on bail because there was no "significant likelihood" that his removal from the United States would occur "in the reasonably foreseeable future." (Petition, Civ. No. 18-11524 DE 1, citing *Leslie v. Attorney General*, 678 F.3d 265 (3d

## II. PROCEDURAL HISTORY & CURRENT STATUS

The petitioner, a native and citizen of Panama, was declared a lawful permanent resident in 2003. On July 27, 2007, he submitted an N-400 application for naturalization. On May 24, 2008, he was arrested on a domestic violence charge, and an order of protection was entered. (See DE 1-5 at pp. 4–11) On July 31, 2008, USCIS denied the N-400 application. (DE 8-3; DE 1-5 at pp. 13–15) Mr. Baptiste did not appeal that ruling.

On March 14, 2011, after the domestic violence matter had concluded, Mr. Baptiste filed a new N-400 application. (See DE 1-5 at pp. 23–26.) On July 28, 2011, he was arrested on charges of importing cocaine. On March 15, 2013, he was convicted in the U.S. District Court for the District of South Carolina of importing 500 grams or more of cocaine in violation of 21 U.S.C. §§ 952 & 960(b)(2)(B)(ii), and sentenced to 108 months' imprisonment. Upon his release from prison, he was placed in ICE custody.

Removal proceedings were instituted, based upon Mr. Baptiste's conviction of an aggravated felony and a controlled substance offense. (See DE 8-1) On January 23, 2018, Mr. Baptiste moved to terminate the removal proceedings, claiming derived citizenship and stating that the denial of his earlier N-400 application was erroneous. (See DE 1 at 1–10). Mr. Baptiste acknowledges that this was "the sole issue" he raised in opposition to removal. (DE 1-1 at p. 2) Ultimately, on June 8, 2018, the motion was denied, and an order of removal to Panama was entered. (DE 1-5 at pp. 37–39; see also DE 8-6

---

Cir. 2012), *abrogation recognized by Guerrero-Sanchez v. Warden, York County Prison*, 905 F.3d 208 (3d Cir. 2018)). Even assuming for purposes of argument that the basis for the habeas petition survives *Guerrero-Sanchez, supra,* and *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018), the habeas petition does not affect the finality of the order of removal or the legality of the government's implementation of it. The only relief, if granted, would be an order that Mr. Baptiste be granted a hearing on an application for release on bond while his removal is pending. Such relief is frankly moot, given that the government stands ready to remove Mr. Baptiste. And the petitioner cannot be heard to complain that his removal is not imminent because he, by his own admission, physically fought the officers who were attempting to deport him.

at p. 3.) On November 2, 2018, the BIA denied Mr. Baptiste's appeal, rendering the order of removal final. (See DE 8-6 at p. 3; DE 1-1 at p. 2.)

Mr. Baptiste sought review of the BIA order in the U.S. Court of Appeals for the Third Circuit (Docket No. 18-3618). The Third Circuit issued a temporary stay, but on January 17, 2019, it vacated that stay, holding that "Petitioner has not shown a likelihood of success on the merits of his petition for review." (DE 8-5) In short, the order of removal is final and is not currently subject to any stay.

On February 14, 2019, USCIS issued a decision denying Plaintiff's N-400 application on the basis that he is statutorily ineligible for naturalization based on the fact he is subject to a final order of removal and is an aggravated felon. (DE 8-6) USCIS also denied Plaintiff's N-336 seeking to reopen or reconsider his 2007 USCIS application as untimely. Id.

### III. ANALYSIS

On February 1, 2019, Mr. Baptiste filed the motion that is now before the Court. (DE 6) He seeks a stay of removal until the merits of this action, in the nature of a petition for a writ of mandamus, are adjudicated.

#### A. REAL ID Act

Mr. Baptiste is subject to a final order of removal. The relief sought on this motion is that this district court stay the execution of that order of removal while the merits of this mandamus petition are being adjudicated. The government responds that, under the REAL ID Act, this district court lacks jurisdiction to enter such an order. I agree.

As part of the REAL ID Act, Congress limited the courts' jurisdiction to hear challenges to the Government's exercise of its discretion to prosecute removal proceedings. Section 1252(g), as amended, provides as follows:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence

3

proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g). *See also Jennings v. Rodriguez*, 138 S. Ct. 830 (2018); *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (§ 1252 applies to Attorney General's decision or action "to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'")

This motion is a cause or claim on behalf of an alien who seeks to restrain the Attorney General's exercise of discretion to "execute [a] removal order[]." The REAL ID jurisdictional exclusion appears on its face to apply, as I have held in parallel contexts. *See, e.g., Nkansah v. Aviles*, Civ. No. 15-2678 (KM), 2015 WL 4647988 (D.N.J., Aug. 5. 2015) ("[petitioner] has also filed a motion for stay of removal. However, the REAL ID Act also strips this Court of jurisdiction to consider such a stay"); *Borodachev v. Rodriguez*, No. CIV. 13-1999 (KM), 2013 WL 1949844, ("[M]y habeas jurisdiction would not extend to the review of discretionary decisions like the denial of a stay of an order of removal that has been reviewed and has become final"); *Tasci v. Tsoukaris*, No. CIV. 13-2438 (KM), 2013 WL 2146901, (D.N.J. May 14, 2013) ("[r]egardless of the terminology—denial of a stay of removal, or execution of removal—this action falls squarely within Section 1252(g)'s mandate that 'no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to . . . execute removal orders against any alien under this Act'").[2]

It is true that in one case I granted a short stay of removal where the petitioner, *via* coram nobis, challenged the validity of the criminal conviction on which his order of removal was based. *Ragbir v. United States of America*, Civ.

---

[2] Another related provision, 8 U.S.C. § 1252(a)(5), bars district courts from hearing challenges to orders of removal. The "sole means of challenging a removal order is through a petition for review, filed with the appropriate Court of Appeals." *Merritt v. United States Immigration & Customs Enforcement*, 737 F. App's 66, 67 (3d Cir. 2018). Mr. Baptiste, of course, has such a challenge pending in the United States Court of Appeals for the Third Circuit, which has denied a stay. *See* p. 3, *supra*.

4

No. 17-1256, 2018 WL 1446407 (D.N.J. March 23, 2018).[3] There, however, the proceeding was a phase in a criminal case over which the court unquestionably had jurisdiction, dating from long before the immigration proceedings had even commenced. The stay sought by the petitioner in *Ragbir*, I wrote, was part of a criminal case, "not a creature of immigration law; it is a component of a federal court's power to preserve the status quo pending the resolution of a criminal case that is properly before it. That power inheres in the judicial function. And that inherent power has a constitutional dimension, in that it permits the court to maintain a party's access to the court and preserve the court's ability to adjudicate the case fully and fairly." 2018 WL 1446407 at *1. In such a case, I wrote, the scope of the Section 1252(g) jurisdiction-stripping provision could be limited because it "was intended to operate *within* the scheme of federal court review of immigration orders. . . . This proceeding is not one to review actions of the immigration authorities. I think that the concerns underlying § 1252(g) are at their weakest, and the inherent judicial power at its strongest, in this non-immigration proceeding relating to the validity of a criminal conviction." *Id.* at *1.[4]

No such considerations are present here. And more fundamentally, the merits of this mandamus petition are not, like the merits of the criminal case, independent of, or readily severable from, the removal proceedings. The N-400 citizenship application is the very matter that Mr. Baptiste raised in opposition to removal, and that contention was rejected in an order upheld by the BIA.

I conclude, therefore, that I lack jurisdiction to enter the stay that is sought here.

---

[3] Although I preliminarily found the asserted grounds sufficiently meritorious to support a stay, in the end I denied the petition and dissolved the stay. *Ragbir v. United States*, Civ. No. 17-1256, 2019 U.S. Dist. LEXIS 13236 (D.N.J. Jan. 25, 2019).

[4] The stay in *Ragbir*, moreover, was a limited one, designed to permit the petitioner to attend and participate in an evidentiary hearing that was scheduled to occur within 30 days. (The date was later adjourned with the government's consent.) Denial of a stay would have left the court in the position of adjudicating contested facts in a criminal matter in the defendant's absence, a problematic proposition

5

### B. Stay Factors

Nevertheless, to remove doubt, I consider the factors governing the grant of a stay. Assuming *arguendo* that I possessed jurisdiction over this application for a stay of removal, I would not grant such a stay.

A stay "is not a matter of right, even if irreparable injury might otherwise result . . . ." *Nken v. Holder*, 556 U.S. 418, 427 (2009) (quoting *Virginian Ry. Co. v. United States*, 272 U.S. 658, 672 (1926)). A stay is an "exercise of judicial discretion" based on "the circumstances of the particular case." *Id.* at 433. "[T]he traditional stay factors contemplate individualized judgments in each case." *Hilton v. Braunskill*, 481 U.S. 770, 777 (1987); *see, e.g., Clinton v. Jones*, 520 U.S. 681, 708 (1997); *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936). Thus a stay is discretionary, but that discretion "is to be guided by sound legal principles," which have been distilled to four familiar factors:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Nken*, 556 U.S. at 426 (citing *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 139 (2005); *Hilton*, 481 U.S. at 776); *see Didon v. Castillo*, 838 F.3d 313, 319 n.12 (3d Cir. 2016); Fed. R. Civ. P. 62(c). The first two factors are the most critical. *Nken*, 556 U.S. at 434.

#### 1. Likelihood of success on the merits

Mandamus is a drastic remedy that is applied in extraordinary cases, usually issued only upon a demonstration of a clear and indisputable legal entitlement to relief. *In re Mujaddid*, No. 18-3756, 2019 WL 360052, at *1 (3d Cir. Jan. 29, 2019) (citing cases). Any mandamus petition, then, faces an uphill climb. But even setting aside that daunting standard, nothing about this petition indicates that Mr. Baptiste has any reasonable prospect of success. Most pertinently, his claim to naturalization is doomed because he has been

6

convicted of an aggravated drug felony, and is currently under a final order of removal.

Mr. Baptiste does not and cannot dispute that he is guilty of an aggravated felony, *i.e.*, the importation of cocaine, as a result of his 2013 conviction. Conviction of an aggravated felony after 1990 bars an applicant from demonstrating the good moral character required for naturalization. *See* 8 C.F.R. § 316.10(b)(1)(ii) ("An applicant shall be found to lack good moral character, if the applicant has been . . . (ii) Convicted of an aggravated felony as defined in section 101(a)(43) of the Act on or after November 29, 1990."). *See also* 8 U.S.C. § 1101(a)(43)(B) (illicit trafficking in controlled substance is aggravated felony). The February 14, 2019 USCIS decision denying N-400 naturalization so held. (DE 8-6) Mr. Baptiste really has no response to the government's argument that the naturalization petition of an aggravated felon is futile.

Added to that problem is another: A court is not empowered to moot a final order of removal by declaring the alien to be a naturalized citizen *nunc pro tunc*. The Third Circuit's opinion in *Duran-Pichardo v. Attorney Gen. of U.S.*, 695 F.3d 282, 287–88 (3d Cir. 2012) is on point. Like Mr. Baptiste, the petitioner in *Duran-Pichardo* argued that his final order of removal was invalid because the USCIS should have acted on, and granted, his petition for naturalization long ago.[5] The Third Circuit's reasoning is worth quoting at length:

> Now, Duran-Pichardo has no remedy because he has committed an aggravated felony and removal proceedings have been initiated against him. *See* 8 U.S.C. § 1429 ("[N]o person shall be naturalized against whom there is outstanding a final finding of deportability pursuant to a warrant of arrest issued under the provisions of this chapter or any other Act; and no application for naturalization shall be considered by the Attorney General if there

---

5   Indeed, Duran-Pichardo's case is more sympathetic. It was "undisputed that Duran-Pichardo did everything that was required for naturalization expect take the oath." 695 F.3d at 285. USCIS, apparently through sheer oversight, failed to formally grant (or deny) the application within the required period of 120 days and schedule the oath ceremony. Some ten years went by, during which Duran-Pichardo remained technically a non-citizen, and hence subject to removal.

7

is pending against the applicant a removal proceeding pursuant to a warrant of arrest issued under the provisions of this chapter or any other Act....").

"Removal proceedings quite simply have priority over naturalization applications.... [I]t would be 'odd if the Attorney General and district courts were barred from considering naturalization applications while removal proceedings are pending, yet the BIA and IJs—who have no jurisdiction over such applications in any case—were not.'" *Zegrean v. Att'y Gen. of U.S.*, 602 F.3d 273, 274–5 (3d Cir.2010) (quoting *Perriello v. Napolitano*, 579 F.3d 135, 142 (2d Cir.2009)); *But cf. Gonzalez v. Sec'y of Dep't of Homeland Sec.*, 678 F.3d 254, 259–61 (3d Cir.2012) (preserving the availability of limited judicial review of naturalization decisions during removal proceedings in circumstances not presented by this case).

Duran–Pichardo argues that he is entitled to *nunc pro tunc* review of his naturalization application. "*Nunc pro tunc*" consideration "permits acts to be done after the time they should have been done with a retroactive effect." *Barden v. Keohane*, 921 F.2d 476, 478 n. 2 (3d Cir.1990). Essentially, Duran–Pichardo wants us to order the agency to review his application as if he was not an aggravated felon and, thus, still eligible for citizenship.

However, we clearly lack the authority to provide *nunc pro tunc* relief here. Equitable relief is unavailable if it would require agency review of an alien's naturalization application while that alien is the subject of an outstanding finding of deportability or a pending removal proceeding. See 8 U.S.C. § 1429; *see also, Cheruku v. Att'y Gen. of U.S.*, 662 F.3d 198, 209 (3d Cir. 2011) ("[A] court may not award equitable relief in contravention of the expressed intent of Congress.") (internal citations omitted); *Ajlani v. Chertoff*, 545 F.3d 229, 240–41 (2d Cir. 2008) ("[A]n alien cannot secure naturalization from either the district court or the Attorney General while removal proceedings are pending....").

We realize that it may appear that we are turning the proverbial "blind eye" toward the Government's lapse in handling Duran–Pichardo's application for naturalization. However, it must be remembered that, but for his status as an aggravated felon, and the criminal convictions that gave rise to that status, he would still be eligible for naturalization. We can undo neither his crimes nor his convictions and therefore, as we have already explained,

8

Duran-Pichardo is removable and ineligible for the relief he is requesting.

*Duran-Pichardo*, 695 F.3d at 287–88. Naturalization—the relief sought in this action—is unavailable while a final order of removal is pending.[6]

All in all, then, there is little or no likelihood of success on the merits.

### 2. Irreparable harm, balancing harm, public interest

Because the essential factor of likelihood of success is absent, the government does not address the other three stay factors.

To be sure, deportation represents a very significant harm, for which damages would not be considered an adequate remedy at law. Under the circumstances, however, it is not really a cognizable harm at all. Mr. Baptiste is subject to a final order of removal, and he has no remaining grounds to oppose it. Naturalization, the relief sought in this action, appears a remote possibility if a possibility at all, and Mr. Baptiste is not entitled to live in the United States while pursuing it.

The harm to the United States and the public interest are both implicated by delay and interference with the administration of the immigration laws. A stay would permit a deportable alien—one deportable as an aggravated felon—to remain, without a colorable justification.

### ORDER

For the foregoing reasons,

IT IS this 8th day of March, 2019

ORDERED that the plaintiff's motion for a stay (DE 6) is DENIED.

_____
KEVIN MCNULTY
United States District Judge

---

6 With respect to the 2007 N-400 application, denied in 2008 (not the 2011 application), the statute of limitations poses an additional bar. The N-336 application to reopen or reconsider the denial, which must be filed within 30 days, was filed some 10 years after the denial.