UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| OSCAR BAPTISTE, | |
| Plaintiff, | Civ. No. 18-16826 (KM) |
| v. | |
| ATTORNEY GENERAL OF THE UNITED STATES, | OPINION |
| Defendant. | |

## KEVIN MCNULTY, U.S.D.J.

### I. INTRODUCTION

The plaintiff, Oscar Baptiste, was removed from the United States to Panama based on his conviction of an aggravated felony. From Panama, he is continuing to litigate this action, which seeks a seeking a writ of mandamus compelling the United States Citizenship and Immigration Service ("USCIS") to adjudicate (*i.e.*, grant) his N-400 application for naturalization as a U.S. citizen. This matter has been the subject of two prior written opinions in connection with Mr. Baptiste's motions to stay his removal. Now before the Court is the motion (DE 14) of the United States to dismiss the complaint or petition for mandamus ("Pet.", DE 1) for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6).

Since the motion was filed, events have overtaken us. First, the final order of removal has been executed, and Mr. Baptiste is litigating this case from Panama. Second, the U.S. Court of Appeals for the Third Circuit has denied his appeal from the ICE administrative proceedings, in terms that dispose of many or most of the issues here.

### II. GOVERNING STANDARD

Rule 12(b)(6), Fed. R. Civ. P., provides for the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The defendant, as the

moving party, bears the burden of showing that no claim has been stated. *Animal Science Products, Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n. 9 (3d Cir. 2011). For the purposes of a motion to dismiss, the facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014).

Federal Rule of Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570; *see also West Run Student Housing Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 169 (3d Cir. 2013). That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678.

The Petition attaches documents, primarily pleadings and decisions referred to in the body of the Petition itself. A court considering a Rule 12(b)(6) motion is confined to the allegations of the complaint, with narrow exceptions:

> "Although phrased in relatively strict terms, we have declined to interpret this rule narrowly. In deciding motions under Rule 12(b)(6), courts may consider "document[s] integral to or explicitly relied upon in the complaint," *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis in original), or any "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document," *PBGC v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)."

*In re Asbestos Products Liability Litigation (No. VI)*, 822 F.3d 125, 134 n.7 (3d Cir. 2016); *see also Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) ("However, an exception to the general rule is that a 'document integral to or explicitly relied upon in the complaint' may be considered 'without converting the motion to dismiss into one for summary judgment.'") (quoting *In re Burlington Coat Factory*, 114 F.3d at 1426); *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

Attached to both sides' papers, in addition, are copies of judicial decisions:

> [O]n a motion to dismiss, we may take judicial notice of another court's opinion—not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity. *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991); *United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991); *see also Funk v. Commissioner*, 163 F.2d 796, 800–01 (3d Cir. 1947) (whether a court may judicially notice other proceedings depends on what the court is asked to notice and on the circumstances of the instant case).

*S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426-27 (3d Cir. 1999). *See generally* Fed. R. Evid. 201.

I therefore will take into consideration those extrinsic documents, not for their truth, but to establish the content of prior relevant decisions and the basis on which they were made.

### III.     PROCEDURAL HISTORY

The Petition, unlike the usual civil complaint, takes the form of a comprehensive statement of facts and memorandum of law, and it attaches exhibits documenting the procedural history of the immigration case and a related state domestic violence proceeding.

#### A. Proceedings before the immigration authorities and in this Court

The petitioner, a native and citizen of Panama, was declared a lawful permanent resident in 2003. On July 27, 2007, he submitted an N-400 application for naturalization. On May 24, 2008, he was arrested on a domestic

3

violence charge, and an order of protection was entered. (*See* DE 1-5 at pp. 4–11) On July 31, 2008, USCIS denied the N-400 application. (DE 8-3; DE 1-5 at pp. 13–15)

The USCIS decision denying the 2007 N-400 application is attached to the Petition. (DE 1-5 p.13) The basis for denial was doubt about Mr. Baptiste's "good moral character," *see* 8 C.F.R. § 316.10(a)(1), as a result of the order of protection that was then currently in effect on a pending domestic violence charge. Mr. Baptiste argues that the matter was not nearly as serious as it may have appeared; for example, the order did not ban him from the marital home. Moreover, the USCIS decision states that the court had "placed" him in a Family Violence counseling program, whereas in reality Baptiste had voluntarily enrolled. Nevertheless, it cannot be disputed that, as stated in the USCIS decision, the order of protection was entered on June 25, 2008 and was currently in effect. The order itself, and documentation of the court's denial of Mr. Baptiste's 2015 application to retroactively "correct" it, are attached to the Petition. (DE 1-5 at pp. 4–11)

The 2008 USCIS decision denying naturalization states that "[y]ou are unable to establish your good moral character until all court actions are fully disposed of." (DE 1-5 at pp. 14–15) From the exhibits attached to the Petition, it is incontestable that the protective order was in effect and the State court proceedings had not yet been disposed of when USCIS rendered its decision on July 31, 2008. The notice of dismissal of the domestic violence charges on the state docket is dated over five months later, January 8, 2009. (DE 1-5 p.4) Mr. Baptiste also alleges that he received misleading procedural advice from the immigration officials, and that they violated deadlines for processing applications.

Mr. Baptiste did not, however, appeal the 2008 denial of his 2007 N-400 naturalization application. Instead, when the domestic violence matter concluded on January 8, 2019, he waited over three years and then reapplied.

On March 14, 2011, Mr. Baptiste filed a new N-400 application. (*See* DE 1-5 at pp. 23–26.) Four months later, on July 28, 2011, he was arrested on

4

federal felony drug charges. On March 15, 2013, he was convicted in the U.S. District Court for the District of South Carolina of importing 500 grams or more of cocaine in violation of 21 U.S.C. §§ 952 & 960(b)(2)(B)(ii), and sentenced to 108 months' imprisonment. Upon his release from prison, he was placed in ICE custody.

Removal proceedings were instituted, based upon Mr. Baptiste's conviction of an aggravated felony, the federal drug offense. (*See* DE 8-1) On January 23, 2018, Mr. Baptiste moved to terminate the removal proceedings, claiming that the denial of his 2007 N-400 application for naturalization was erroneous. (*See* DE 1 at 1–10). Mr. Baptiste acknowledges that this was "the sole issue" he raised in opposition to removal. (DE 1-1 at p. 2)

On June 8, 2018, the motion to terminate was denied, and an order of removal to Panama was entered. (DE 1-5 at pp. 37–39; *see also* DE 8-6 at p. 3.) On November 2, 2018, the BIA denied Mr. Baptiste's appeal, rendering the order of removal final. (*See* DE 8-6 at p. 3; DE 1-1 at p. 2.)

Mr. Baptiste sought review of the order of removal in the U.S. Court of Appeals for the Third Circuit (Docket No. 18-3618). The Third Circuit issued a temporary stay, but on January 17, 2019, it vacated that stay, holding as follows:

> The temporary administrative stay of removal entered on November 29, 2018, is vacated, and the foregoing motion to stay removal is denied. Petitioner has not shown a likelihood of success on the merits of his petition for review. See Nken v. Holder, 556 U.S. 418, 434 (2009). In particular, it appears that the Board of Immigration Appeals did not err in holding that it lacked jurisdiction to review the denial of Petitioner's application for naturalization. See Zegrean v. Att'y Gen., 602 F.3d 273, 275 (3d Cir. 2010).

(DE 8-5)

Disappointed in the Court of Appeals, on February 1, 2019, Mr. Baptiste filed a motion in this Court seeking a stay of removal.

On February 14, 2019, USCIS issued a decision denying Mr. Baptiste's second, 2011 N-400 application on the basis that he was statutorily ineligible

5

for naturalization on the twin bases that he was subject to a final order of removal and had been convicted of an aggravated felony. (DE 8-6) USCIS also denied Plaintiff's N-336 application to reopen or reconsider his 2007 N-400 naturalization application as untimely. *Id.*

On March 8, 2019, I denied Mr. Baptiste's motion for a stay, finding that I lacked jurisdiction to stay an order of removal under the REAL ID Act. *See* 8 U.S.C. § 1252(g) ("[N]o court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.") (DE 11)[1]

On March 25, 2019, the United States filed the motion to dismiss the Petition that is now before the Court. (DE 14)

Two days later, the final order of removal, no longer stayed, was executed. On March 27, 2019, Mr. Baptiste states, he was removed from the United States to Panama. (DE 21 at 1–2) As a result, he was impeded in responding to the motion to dismiss, and so I granted his two motions for an extension of time. (DE 22, 25)

On July 24, 2019, Mr. Baptiste filed his response to the motion to dismiss. (DE 26) The government has not filed a reply.

### B. Decisions of the Court of Appeals

Backtracking in the chronology only slightly, I review the course of Mr. Baptiste's appeal from the denial of relief by the Immigration Judge and the BIA.

On May 23, 2019, the United States Court of Appeals for the Third Circuit filed a non-precedential decision affirming certain of the decisions by which the immigration court denied him the relief he sought, while finding it lacked jurisdiction over others. (*Baptiste v. Attorney General*, Docket No. 18-3618, 776 F. App'x 94 (3d Cir. 2019)).

---

[1] Later, on March 26, 2019, I denied Mr. Baptiste's motion for reconsideration of my ruling denying a stay. (DE 15)

In the Court of Appeals, Mr. Baptiste argued, as he does here, that the USCIS had improperly denied his 2007 N-400 naturalization application, because it misapprehended the nature of his domestic violence charges. He also argued that unreasonable delay, particularly as to the 2011 reapplication, violated his due process rights and prevented him from demonstrating good moral character. 776 F. App'x at 96–97.

The Court of Appeals first noted that it lacked jurisdiction to review a final order of removal against an alien who, like Mr. Baptiste, is removed based on the commission of an aggravated felony. *Id.* at 97 (citing 8 U.S.C. § 1252(a)(2)(C)). Nevertheless, the court held, it retained jurisdiction "to review colorable constitutional claims and question of law presented in petitions for review of final removal orders." *Id.* It therefore reviewed **[1]** the correctness of the decision of the IJ and BIA that they lacked jurisdiction to consider Baptiste's challenge to the denial of his naturalization application(s). It also asserted jurisdiction **[2]** "to review Baptiste's assertion that his due process rights have been violated." *Id.*

As to issue **[1]**, the Court of Appeals affirmed. To challenge the propriety of USCIS's 2008 denial of his naturalization application, the Court held, "Baptiste should have timely sought review before an immigration officer. *See* 8 U.S.C. § 1447(a); 8 C.F.R. § 336.2. Thereafter, an appropriate District Court could have reviewed the immigration officer's decision. *See* 8 U.S.C. § 1421(c)." *Id.* at 97. Those events, as I have confirmed from the record, did not occur.

As to issue **[2]**, the delay in processing, the Court of Appeals likewise found no basis for relief. An administrative decision is to be rendered within 120 days after the initial examination. *See* 8 C.F.R. § 335.3(a). Once the decision has been made (or if 120 days have passed without a decision), the applicant may go directly to the United States District Court for a hearing. *Id.* at 97–98 (citing 8 U.S.C. § 1447(c). As the Court noted, Mr. Baptiste

> did not use this process while he was still potentially eligible for naturalization. Instead, he waited over seven years after filing his 2011 naturalization application to request a hearing before the

District Court. In the meantime, his 2013 aggravated felony conviction rendered him ineligible for naturalization. *See* 8 U.S.C. §§ 1101(f)(8), 1427(a)(3). Under these circumstances, Baptiste is estopped from asserting that the delay in adjudicating his naturalization application violated his due process rights.

*Id.* at 98.

Finally, the Court of Appeals, citing *Duran-Pichardo v. Attorney General*, 695 F.3d 282, 286-87 & n.7 (3d Cir. 2012), found that in any event, Mr. Baptiste would not be entitled to retroactive or *nunc pro tunc* relief.

Mr. Baptiste petitioned for panel rehearing and rehearing en banc. His petition raised precisely the grounds he has raised in his petition to this Court. In particular, he alleged that the denial of due process in his immigration proceedings entitled him to an award of United States citizenship, citing, *inter alia*, *Brown v. Holder*, 763 F.3d 1141 (9th Cir. 2014).

Rehearing was denied, and the Court of Appeals' mandate issued on July 19, 2019.

## IV. ANALYSIS

### A. Standards for Mandamus/APA Appeal

Mr. Baptiste seeks a writ of mandamus compelling action by the Attorney General, an extraordinary remedy that will issue only on a showing of a clear and indisputable entitlement:

> Mandamus is a drastic remedy that is granted only in extraordinary cases. *In re Diet Drugs Prods. Liab. Litig.*, 418 F.3d 372, 378 (3d Cir. 2005). Generally, mandamus is a "means 'to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it *126 is its duty to do so.'" *United States v. Christian*, 660 F.2d 892, 893 (3d Cir. 1981) (quoting *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 26, 63 S. Ct. 938, 87 L.Ed. 1185 (1943) ). To demonstrate that mandamus is appropriate, a petitioner must establish that he has "no other adequate means" to obtain the relief requested, and that he has a "clear and indisputable" right to issuance of the writ. *Madden v. Myers*, 102 F.3d 74, 79 (3d Cir. 1996).

8

*In re Mujaddid*, 762 F. App'x 124, 125–26, 2019 WL 360052, at *1 (3d Cir. Jan. 29, 2019).

As I remarked in connection with the stay application, any mandamus petition faces an uphill climb. But even setting aside that daunting standard, Mr. Baptiste's claim to naturalization *nunc pro tunc* is very far from a clear and indisputable one; indeed, it may ultimately be doomed because he was convicted of an aggravated drug felony and subjected to a final order of removal.

Mr. Baptiste also states that he is challenging the agency's final decision under the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 555(b), 706(1). He asserts that the processing of the application was unduly delayed, in violation of regulations, and that bad advice from immigration officials caused him to sacrifice his procedural rights. Citing *Judulang v. Holder*, 565 U.S. 42, 53 (2011), he asserts that agency action must be reversed if it is "arbitrary and capricious."

### B. Ineligibility for Naturalization Because of Aggravated Felony

Mr. Baptiste does not dispute that he is guilty of an aggravated felony, *i.e.*, the importation of cocaine, as a result of his 2013 federal conviction in the U.S. District Court for the District of South Carolina. Conviction of an aggravated felony after 1990 bars an applicant from demonstrating the good moral character required for naturalization. *See* 8 C.F.R. § 316.10(b)(1)(ii) ("An applicant shall be found to lack good moral character, if the applicant has been . . . (ii) Convicted of an aggravated felony as defined in section 101(a)(43) of the Act on or after November 29, 1990."). *See also* 8 U.S.C. § 1101(a)(43)(B) (illicit trafficking in controlled substance is aggravated felony).

The February 14, 2019 USCIS decision denying his 2011 N-400 reapplication for naturalization so held, and correctly so. (DE 8-6).[2] On appeal,

---

2     This is related to, but distinct from, another bar to relief that applied when Mr. Baptiste's removal proceedings were pending. Essentially, the law embodies a policy that removal proceedings have priority over naturalization disputes, and the latter will not be permitted to derail the former. *See* 8 U.S.C. § 1429 ("[N]o person shall be naturalized against whom there is outstanding a final finding of deportability pursuant

the Third Circuit has now affirmed the reasoning of the USCIS. *See* 776 F. App'x at 98 ("In the meantime, his 2013 aggravated felony conviction rendered him ineligible for naturalization.").

### C. Denial of 2007 N-400 Application

Mr. Baptiste seeks, however, to undermine the basis for the denial of his naturalization petition. He contends that in 2008, the USCIS erroneously denied his first, 2007 N-400 naturalization application. The argument, although it is not put so baldly, seems to be this: If the 2007 application had been properly granted, Mr. Baptiste could have gone on to import cocaine in the more secure status of a naturalized citizen.[3] He found himself removable, however, because he was convicted of importing cocaine without having first been naturalized. So he seeks, in effect, a declaration of naturalization *nunc pro tunc*, as of 2007.

Most broadly, this claim must be denied based on the reasoning of the Third Circuit. On appeal from the rulings of USCIS, the Court of Appeals held that the IJ and BIA lacked jurisdiction to reconsider the legality of the naturalization proceedings, but nevertheless retained jurisdiction to consider a due process challenge. In the course of doing so, however, the Third Circuit reasoned as follows that to challenge the propriety of USCIS's 2008 denial of

---

to a warrant of arrest issued under the provisions of this chapter or any other Act; and no application for naturalization shall be considered by the Attorney General if there is pending against the applicant a removal proceeding pursuant to a warrant of arrest issued under the provisions of this chapter or any other Act...."). *See also Duran-Pichardo v. Attorney Gen. of U.S.*, 695 F.3d 282, 287–88 (3d Cir. 2012); *Zegrean v. Att'y Gen. of U.S.*, 602 F.3d 273, 274–5 (3d Cir. 2010) ("Removal proceedings quite simply have priority over naturalization applications.... [I]t would be 'odd if the Attorney General and district courts were barred from considering naturalization applications while removal proceedings are pending, yet the BIA and IJs—who have no jurisdiction over such applications in any case—were not.'") (quoting *Perriello v. Napolitano*, 579 F.3d 135, 142 (2d Cir. 2009)).

[3] "In other words, but not for the USCIS's *mishandling* of Plaintiff's naturalization process and the concomitant unconstitutional acts of other immigration officials in preventing Plaintiff from acquiring US citizenship, Plaintiff would have naturalized as a United States citizen in 2008 and there would be no issue as to whether his March 15, 2013 drug conviction preclude him from obtaining naturalization." (Pl. Brf. p. 11 (DE 26)).

his naturalization application, "Baptiste should have timely sought review before an immigration officer. See 8 U.S.C. § 1447(a); 8 C.F.R. § 336.2. Thereafter, an appropriate District Court could have reviewed the immigration officer's decision. See 8 U.S.C. § 1421(c)." 776 F. App'x at 97. That did not occur, and there was no denial of due process.

The motion to dismiss approaches the issue from a slightly different angle: Because Baptiste did not timely seek review, as the Third Circuit stated, his challenge is now barred by the six-year statute of limitations. The time limit applicable to an APA appeal of an administrative decision is the general statute of limitations for a civil action against a federal agency, 28 U.S.C. § 2401(a):

> District courts in other circuits have also applied § 2401(a) in immigration cases. See Perez v. Napolitano, No. 10–348 (RBK/KMW), 2011 WL 149889 at 3 n. 1 (D.N.J. Jan.18, 2011); Martinez–Rodriguez v. U.S. Dep't of Homeland Sec., No. 06 C 10220(MHD), 2009 WL 3241533, at *5, *7 (S.D.N.Y. Oct.5, 2009) (applying § 2401(a) to petition for naturalization). Petitioner's case is clearly an action against an agency of the United States requesting relief from that agency, so § 2401(a) applies to his petition.

Tzirides v. U.S. Dep't of Homeland Sec., No. 11 C 6572, 2013 WL 1286675, at *4 (N.D. Ill. Mar. 27, 2013).

That limitations period is six years, running from the date "the right of action first accrues." 28 U.S.C. § 240a(a). Here, the relevant accrual event is the agency's final action in 2008 denying the naturalization petition. See Phillips v. Lynch, No. CV 15-1514, 2016 WL 3248307, at *7 (E.D.N.Y. June 9, 2016), aff'd, 674 F. App'x 106 (2d Cir. 2017), as amended (Feb. 1, 2017) (discussing final agency action as triggering statute of limitations, citing Dalton v. Specter, 511 U.S. 462, 470, 114 S. Ct. 1719, 1725 (1994)). There can be no discovery-rule issue here as to accrual. Whatever may have happened in the course of the 2007 application, Mr. Baptiste was surely aware of his injury when it was denied in 2008. And indeed, he surely knew of the denial when he reapplied in 2011, a date that is also outside the six-year limitations period.

The 2007 N-400 application was denied on July 31, 2008. This action was filed some ten years later, on November 28, 2018. The merits aside, that is well beyond the APA statute of limitations. This Petition, then, would in the alternative be properly dismissed as untimely.

### D. The 2011 N-400 Reapplication

As noted above, whatever the disputes over the 2008 denial may have been, Mr. Baptiste had another opportunity. After his domestic violence matter was concluded, and an ensuing three-year delay, he reapplied for naturalization. Again, he argues that but for the USCIS's delay in processing, he would have had his citizenship in advance of his commission of a drug felony. But again, he failed to come to District Court to challenge that result until 2018. In the meantime, as the Court of Appeals held, his 2013 conviction disentitled him to naturalization. 776 F. App'x at 98 (quoting *Duran-Pichardo*, 695 F.3d at 286–87 & n.7 (relying on estoppel to hold that a petitioner who "failed to invoke the very statutory and regulatory scheme that Congress enacted to address this type of delay," could not thereafter "assert that he was deprived of due process of law.")). While *Duran-Pichardo* is not in precisely the same procedural posture as the present case, I, too, find its estoppel principles applicable—and the Third Circuit has already directly applied them to Mr. Baptiste's case.

For the reasons stated above, I am not persuaded by Mr. Baptiste's arguments, and in any event—whether *via* estoppel or the statute of limitations—he is not entitled to assert them now to attack a decade-old denial of naturalization. Although I do not need to reach the issue, I am also dubious that Mr. Baptiste would be entitled to the remedy of *nunc pro tunc* restoration to pre-felon status in connection with naturalization.

## CONCLUSION

For the foregoing reasons, the motion of the United States (DE 14) to dismiss the Petition is GRANTED.

KEVIN MCNULTY
United States District Judge